**Opinion issued August 12, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-24-00562-CR**
**01-24-00567-CR**

———————————

**JAMES MICHAEL SOTELO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cases 1715366 and 1720032**

# O P I N I O N

The appellant was charged with murder[1] and aggravated assault.[2] A jury found

him guilty as charged of murder, but acquitted him of aggravated assault and found

---

[1] Trial Court Cause No. 1715366 (No. 01-24-00562-CR).

[2] Trial Court Cause No. 1720032 (No. 01-24-00567-CR).

him guilty of the lesser-included offense of deadly conduct. The trial court assessed punishment at forty years' confinement for the murder and two years' confinement for the deadly conduct.

The appellant raises five points of error: One related to an alleged deficiency in the indictment, one claiming ineffective assistance of counsel, and three related to court costs. We modify the trial court's judgment by striking the repetitive court costs from the judgment in the deadly conduct case and, as modified, affirm.

## Background

Because of the nature of the appellant's claims, it is unnecessary to go into detail regarding his offenses. For reasons that are unclear, the appellant fired thirteen shots at his best friend, hitting him in the back eleven times. One bullet went through a wall and hit the appellant's brother in the head. The brother survived but the best friend did not. The appellant testified the shooting was in self-defense.

## Indictment Signature

In his first point the appellant complains that his indictments indicate they were signed by the *assistant* foreman of the grand jury. The appellant directs us to Code of Criminal Procedure Article 21.02, which lists among the "requisites of an indictment" that an indictment "shall be deemed sufficient" if it meets nine criteria, one of which is that "[i]t shall be signed officially by the foreman of the grand jury." Tex. Code Crim. Proc. Art. 21.02(9). The appellant argues the lack of the foreman's

signature means his indictments were insufficient. The appellant argues that without "sufficient" indictments, the trial court's jurisdiction was never invoked and the judgments are void.

The Court of Criminal Appeals has rejected the argument that the lack of the foreman's signature renders an indictment invalid. *See Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000) (citing article 21.02 and holding the "lack of a signature is of no consequence in this matter, and is, in fact, not essential to the validity of an indictment"); *Tatmon v. State*, 815 S.W.2d 588, 590 (Tex. Crim. App. 1991) (holding trial court did not abuse discretion in denying motion to quash based on lack of foreman's signature, reasoning that "the absence of [foreman's] signature did not adversely affect the validity of the indictment"); *Owens v. State*, 540 S.W.2d 324, 325 (Tex. Crim. App. 1976) ("The failure of the foreman of the grand jury to sign the indictment does not vitiate that instrument. It is permissible therefore for another grand juror to sign the indictment in his stead." (citations omitted)).

The appellant criticizes the Court of Criminal Appeals's reasoning on this subject. Specifically, he argues that the Court failed to consider statutory change in 1966. But *Tatmon* addresses the statutory change. *See* 815 S.W.2d at 589–90. Even if it did not, we are not free to disregard the direct holdings of the Court of Criminal Appeals merely because a litigant or even this Court thinks they're wrong. We overrule the appellant's first point.

**Ineffective Assistance of Counsel**

In his second point the appellant claims he received ineffective assistance of counsel. In the statement of his point the appellant alleges trial counsel "fail[ed] to know the range of punishment for murder." In the body of his point, the appellant's complaint is that trial counsel requested community supervision during the punishment phase, but, as the appellant correctly notes, Texas law does not currently allow trial courts to suspend imposition of sentence for murder convictions. *See* TEX. CODE CRIM. PROC. arts. 42A.054(2), 42A.056(3).

Assuming, arguendo, trial counsel's performance was deficient, the appellant has failed to direct us to any evidence in the record showing he was harmed by trial counsel's request for an illegally lenient sentence. To prevail on a claim of ineffective assistance, a defendant must prove, by a preponderance of the evidence not just that counsel's actions fell below an objective standard of reasonableness, but that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*. at 697. Ineffective-assistance claims, including the showing of prejudice, must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

4

In his brief, the appellant argues he was harmed because counsel led him to believe he was probation eligible for murder. As his only support for this, the appellant points to applications for community supervision he filed before trial. The State correctly notes, though, that motions for community supervision *must* be filed before trial, meaning that at the time the appellant filed his motions it was still a possibility for the jury to return verdicts that would make the appellant eligible for community supervision (*e.g.*, acquitting him of murder but convicting of the aggravated assault, or convicting for a lesser included offense of murder). *See* TEX. CODE CRIM. PROC. art. 42A.055(b). Nothing in the record supports the appellant's claim that his counsel misinformed him regarding his community supervision eligibility.

The appellant claims his "belief of eligibility tainted the entire trial for Appellant," but he does not cite anything in the record showing how this supposed belief affected anything. In *Swinney v. State*, the defendant was eligible for community supervision only if he chose to have punishment assessed by the jury; he chose instead to have the trial court assess punishment and, as here, his attorney requested community supervision although it was not a possible punishment. 663 S.W.3d 87, 89–91 (Tex. Crim. App. 2022). The Court of Criminal Appeals rejected Swinney's ineffective-assistance claim, though, because, assuming trial counsel had given Sweeney incorrect advice before he made his punishment election, Sweeney

5

did not produce evidence showing how, or even whether, the incorrect advice altered his decision-making. *Id*. at 92.

*Swinney* controls here. The record does not show that any incorrect advice from trial counsel altered any decision the appellant made. There is no record evidence that the appellant's decision to go to trial or his election to have the trial court assess punishment was informed by an erroneous understanding of his eligibility for probation if convicted. We overrule the appellant's second point because the appellant has not shown any prejudice from the allegedly ineffective assistance.

## Court Costs Points

### A. Duplicate Costs

In his third point the appellant points out that he has been assessed duplicate court costs for these two convictions. When a defendant is convicted of multiple offenses in a single criminal action, each court cost or fee may be assessed only once TEX. CODE CRIM. PROC. art. 102.073(a). Each cost should be assessed only for the highest degree offense of conviction. TEX. CODE CRIM. PROC. art. 102.073(b). The appellant asks us to strike the repetitive costs from one of the convictions and the State agrees to this remedy. We grant the appellant's requested relief. We modify the judgment for the deadly conduct conviction (cause 1720032) to reflect $0 in

court costs and we modify the bill of cost to show consolidated state and local court costs as $0.

## B.    Witness Summoning

In his fourth point the appellant claims he was incorrectly assessed witness summoning fees for witnesses who were not summoned. He asks us to reduce the amount of fees accordingly.

A convicted defendant is required to pay a $5 reimbursement fee for each witness summoned by a peace officer. TEX. CODE CRIM. PROC. art. 102.011(a)(3). Additionally, the defendant must pay a reimbursement fee of 29¢ per mile a peace officer travels to summon a witness, as well as reimbursement for all necessary meals and lodging the officer incurred summoning witnesses. TEX. CODE CRIM. PROC. art. 102.011(b).

The bill of cost in this case shows $835 assessed for "LEA – Summon Witness." In his brief the appellant figures that at $5 per subpoena there must have been 167 subpoenas, but the record contains 21 subpoenas that were not executed. The appellant asks us to reduce the assessed LEA – Summon Witness costs by $105. By our count the record contains 21 unserved subpoenas and 147 served subpoenas. If we followed the appellant's formula and assumptions—that he is responsible for witness summoning fees only to the degree the appellate record contains served

subpoenas—we would reduce the assessed costs for summoning witnesses to $735. We do not believe, however, that is the correct analysis.

The appellant and the State agree that, despite the existence of Code of Criminal Procedure article 103.008, which allows defendants to complain about incorrect court costs in the trial court, where facts can be developed easily, the Court of Criminal Appeals has declared that defendants may raise this sort of arithmetical claim of error for the first time on appeal. They direct us to *Johnson v. State*, 423 S.W.3d 385 (Tex. Crim. App. 2014) and *London v. State*, 490 S.W.3d 503 (Tex Crim. App. 2016). After reviewing these cases, we do not believe they allow a defendant to go behind the face of a bill of cost as the appellant is attempting to do.

In *Johnson*, the judgment assessed $234 in court costs. Inconveniently, the appellate record contained no bill of cost. On appeal, Johnson complained the evidence was insufficient to support the assessed amount. The district clerk then supplemented the record with a bill of cost, but the Fourteenth Court declined to consider the supplemental bill of cost, reasoning it was inappropriate to consider it on appeal because it had never been presented to the trial court. The Fourteenth Court deleted the assessed costs from the judgment "[b]ecause there was no evidence in the record to support the trial court's assessment of a specific dollar amount as court costs." *Johnson v. State*, 389 S.W.3d 513, 515 n.1, 517 (Tex. App.—Houston [14th Dist.] 2012), *aff'd as modified*, 423 S.W.3d 385 (Tex. Crim. App. 2014).

8

On discretionary review the Court of Criminal Appeals made a variety of holdings that would influence the next decade of court-cost litigation. Two of these holdings are relevant here.

The State had argued Johnson forfeited his complaint by not raising it in the trial court. The court rejected the State's preservation argument and held that a defendant may complain about court costs for the first time on appeal if he had not been presented with a bill of costs in open court and given an opportunity to object. *Johnson*, 423 S.W.3d at 390–91.

Another important holding regarded how to review the sufficiency of the evidence to support an assessment of court costs. *Johnson* held that when a defendant challenges assessed costs, appellate courts do not apply the legal-sufficiency standard that is used to assess sufficiency of the evidence to prove guilt. *Id.* at 389–90. Rather, courts "review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost." *Id*. at 390. *Johnson* went on to hold that it was appropriate to supplement the record with a bill of cost, and that, absent a challenge to a specific cost, a bill of costs showing $234 in statutorily allowed costs was itself a sufficient basis to support the assessment of $234 in costs on the judgment. *See id.* at 391–92. *Johnson* did not involve a claim like the appellant's, which claims the bill of costs is incorrect due to a mistake by the clerk or sheriff.

In *London*, the defendant claimed that assessing costs for summoning witnesses violated the confrontation and compulsory-process rights of indigent defendants. 490 S.W.3d at 506. This Court had originally rejected this claim as unpreserved. *London v. State*, No. 01-13-00441-CR, 2015 WL 1778583, at *4 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015) (mem. op., not designated for publication) (citing *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) for proposition that "[a] defendant may not raise for the first time on appeal an as-applied challenge to constitutionality of a statute"), *rev'd*, 490 S.W.3d 503 (Tex. Crim. App. 2016).

But on discretionary review, the Court of Criminal Appeals held that preservation was not required. It invoked *Johnson* for the proposition that "an appellant may generally challenge the imposition of even mandatory court costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs." *London*, 490 S.W.3d at 507. On remand, this Court addressed London's constitutional argument and rejected it on the merits. *See London v. State*, 526 S.W.3d 596, 598–602 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Neither *Johnson* nor *London* involved an arithmetical complaint like the one the appellant raises. Both cases presented legal, not factual questions. In both cases, had the defendant prevailed, it would have resulted in costs being zeroed out—the entire bill for Johnson, the witness summoning fees for London. Later court-cost

10

cases from the Court of Criminal Appeals have all involved legal challenges to costs *qua* costs, not arithmetical claims. *See Peraza v. State*, 467 S.W.3d 508, 510 (Tex. Crim. App. 2015) (defendant complaining fee for preserving DNA records was unconstitutional); *Salinas v. State*, 523 S.W.3d 103, 105 (Tex. Crim. App. 2017) (defendant complaining consolidated court cost statute was unconstitutional); *Johnson v. State*, 537 S.W.3d 929 (Tex. Crim. App. 2017) (defendant complaining rehabilitation fee was unconstitutional); *Allen v. State*, 614 S.W.3d 736, 740, 743 (Tex. Crim. App. 2019) (defendant complaining witness-summoning fee was unconstitutional); *Dulin v. State*, 620 S.W.3d 129, 130 (Tex. Crim. App. 2021) (defendant complaining time payment fee was unconstitutional).

Other than *Johnson*'s declaration that court costs need have only a "basis" in the record, the Court of Criminal Appeals's caselaw in this area gives us no guidance on how to review the appellant's claim. This Court, in an unpublished opinion, has engaged in the sort of review the appellant requests—counting up the served subpoenas in the record, multiplying by $5, and reducing the assessed court costs to that amount. *See Robles v. State*, No. 01-16-00199-CR, 2018 WL 1056482, at *6 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, pet. ref'd) (mem. op., not designated for publication). In *Robles*, the defendant raised the same constitutional challenge to witness-summoning fees that had been rejected in *London*. In its brief in *Robles*, the State contested Robles's constitutional claims but noted that the record contained

11

two unserved subpoenas and asked this Court to reduce the assessed court cost by $10. Without addressing the standard of review, this Court agreed and modified the judgment to reduce the assessed costs by $10.

But this unpublished opinion is not binding precedent. *See* TEX. R. APP. P. 47.7(a). Its persuasive value is reduced by the lack of a discussion of the standard of review and the fact that the State agreed with reducing the court costs. Without a discussion of the issue or adversarial briefing on the matter, there is no reason to believe we considered or decided a standard of review in *Robles*. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Other courts, in unpublished opinions, have considered claims like the appellant's and, as in *Robles*, do not discuss the standard of review. *See e.g.*, *Wilson v. State*, No. 05-22-00452-CR, 2023 WL 4758470, at *2 (Tex. App.—Dallas July 26, 2023, pet. ref'd) (mem. op., not designated for publication) (without discussing standard of review, reducing court costs by $10 because record contained two unserved subpoenas and no served subpoenas); *Youngblood v. State*, No. 02-17-00331-CR, 2019 WL 2635560, at *2 (Tex. App.—Fort Worth June 27, 2019, pet. ref'd) (mem. op., not designated for publication) (in *Anders* case, with no discussion of standard of review, engaging in sua sponte recalculation of bill of cost

12

and reducing witness summoning fee from $180 to $65 because record "contain[ed] only thirteen subpoenas").

We have found three published cases from other intermediate courts addressing a claim like the appellant's. In *Rhodes v. State*, the defendant's appellate counsel filed an *Anders*[3] brief but also claimed some of the court costs were incorrect. 676 S.W.3d 228 (Tex. App.—Houston [14th Dist.] 2023, no pet.). One such cost was $185 for "Attach/Convey Witness." *Id*. at 233. The Fourteenth Court noted there was "nothing in the record demonstrating that a peace officer served a subpoena on any witnesses or attached any witness" and deleted the $185 fee. *Id*.

As an *Anders* case, *Rhodes* did not have adversarial briefing contesting this issue. *Rhodes* did not discuss a standard of review, nor did it cite authority for the proposition that summoning or attachment fees must be supported by subpoenas or attachments in the appellate record. *See Johnson*, 423 S.W.3d at 390 (holding bill of cost provided sufficient basis to support assessment of costs). Subpoenas and attachments are not on Rule of Appellate Procedure 34.5's list of items required to be included in a clerk's record, so unless a party or the appellate court requests their inclusion, they will not appear in an appellate record to support fees for summoning or attaching witnesses. Rhodes was convicted by a jury for a first-degree felony. *See*

---

[3]     *Anders v. California*, 386 U.S. 738 (1967) requires appointed counsel who believes there are no colorable claims of reversible error to appeal to file a brief with the appellate court explaining his or her beliefs on the subject. *See id.* at 744.

13

*Rhodes*, 676 S.W.3d at 231. It would be unusual for no witnesses to be summoned in such a case. Because *Rhodes* does not discuss a standard of review, it provides no more guidance for our issue than does *Robles*.

In *Ikemere v. State*, another published case from the Fourteenth Court, the defendant complained about $2,835 assessed as an "Attach/Convey Witness" fee. ___ S.W.3d ___, No. 14-23-00285-CR, 2025 WL 1033959, at *4 (Tex. App.—Houston [14th Dist.] Apr. 8, 2025, no pet.). The appellate record contained no attachments, but "roughly sixty [subpoena] returns." *Id*. at *5. Rather than striking the "Attach/Convey Witness" fee, as the same court had done in *Rhodes*, or reducing the assessed costs to comport with the number of served subpoenas, as we did in *Robles*, the *Ikemere* court "reverse[d] the trial court's award of the reimbursement fees and remand[ed] for a redetermination of mandatory reimbursement fees." *Id*. at *5.

> *Ikemere* quoted two passages from *Johnson* in its standard of review:
>
> Thus, "we review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost" under a traditional evidence-sufficiency standard. [*Johnson*, 423 S.W.3d at 390.] Nonetheless, a reviewing court may be asked to determine whether "the assessed court costs are supported by facts in the record." *Id*. at 395.

*Ikemere*, 2025 WL 1033959, at *4.

The two quoted passages appear five pages apart in *Johnson* and are from different sections of the opinion, addressing different legal issues. *See* 423 S.W.3d

14

at 390, 395. By combining these quotes in this way, *Ikemere* created a requirement not found in *Johnson*.

The first quoted passage explained that *Johnson*'s rule of sufficiency for court costs was merely that there had to be a basis in the record for the costs. *Id.* at 389. *Johnson* held that a bill of cost listing statutorily authorized costs was a sufficient basis to support an assessed cost. *Id*. at 390.

In a different section of the opinion, however, *Johnson* addressed whether court costs could be affirmed even if the record contained no bill of cost. *Id.* at 394–96. *Johnson* held a bill of cost was not required: "[W]e believe that the Legislature did not intend in every case for a specific amount of costs to be supported only by a bill of cost from the record for an appellate court to conclude that *the assessed costs are supported by the record*." *Id*. at 395 (emphasis added). That's the second quote *Ikemere* used. In context, it requires courts to review the record to support an assessment of court costs *if there is no bill of cost*. It does not require, or even authorize, a reviewing court to go behind the face of a bill of cost. We do not believe *Ikemere* correctly states the standard of review for when a defendant challenges the amount assessed by a facially valid bill of cost.

The final published case on this matter used a standard of review that pre-dates *Johnson* and does not seem consistent with *Johnson*. In *Wilson v. State*, the defendant complained about $375 in witness summoning fees. 714 S.W.3d 900, 914

(Tex. App.—Eastland 2025, no pet.). Wilson claimed this amount should have been reduced to $220 "because only forty-four subpoenas were actually served." *Id*. The record contained thirty-one unserved subpoenas. The Eleventh Court engaged in statutory analysis and concluded that defendants did not have to pay a reimbursement fee for subpoenas that were not actually served. *Id*. at 916. It reduced the assessed court costs to comport with the number of served subpoenas in the record. *Id*.

Like the other courts to address this matter, the Eleventh Court did not cite authority for the proposition that the amount of assessed summoning costs must be supported by subpoenas in the appellate record. And for its standard of review, it did not rely on *Johnson*, which requires only a "basis" in the record to support assessed costs on a judgment. Instead, *Wilson* relied on a Twelfth Court case that pre-dated *Johnson*. "We measure sufficiency [of the evidence to support court costs] by reviewing the record in the light most favorable to the award." *Id*. at 914 (quoting *Ballinger v. State*, 405 S.W.3d 346, 349 (Tex. App.—Tyler 2013, no pet.)). That sounds like the legal-sufficiency standard *Johnson* disclaimed; if a reviewing court is looking only for a "basis" for a cost, rather than evidentiary support for it, there is no need to view the record in a particular light. A basis is there or it isn't.

The Twelfth Court got this standard from *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010), which involved a type of court-cost complaint that is

16

conceptually different from what was raised here or in *Wilson*. Mayer complained about being assessed fees for his appointed attorney under Code of Criminal Procedure Article 26.05(g). *See id.* at 553, 556. That article applies only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided to the defendant . . . ." TEX. CODE CRIM. PROC. art. 26.05(g). Mayer was complaining that there was insufficient evidence to support the trial court's Article 26.05(g) finding.

Mayer's complaint was different from the complaint in *Wilson* (and the one here) in an important way. Mayer was arguing that the evidence was insufficient to support a discretionary finding by the trial court, but Wilson was arguing against a mandatory assessment by the clerk. Reviewing the evidentiary support for a trial court's discretionary finding is an ordinary type of sufficiency review. Reviewing the evidentiary support for a mandatory assessment by a clerk is not. Clerks do not hold hearings where parties admit exhibits that are sent up on appeal. Clerks do not make findings to be reviewed for legal sufficiency. Reviewing the sufficiency of evidence to support the actions of a clerk is not something appellate courts do. *See* TEX. R. APP. P. 43.2 (listing types of judgments courts of appeal may issue, all relating to the judgment of the trial court).

In *Johnson*, the Court of Criminal Appeals recognized that the attorney's-fee court cost at issue in *Mayer* was conceptually different from the sort of court costs

17

at issue in *Wilson* and here. *See* 423 S.W.3d at 389. *Johnson* described court costs as being two types, mandatory and discretionary. *Id.* The attorney fees authorized by Article 26.05(g) were discretionary, but the reimbursement court costs in Chapter 102 of the Code of Criminal Procedure, which includes witness summoning fees, were mandatory. *Id.* We do not believe *Wilson* was correct to apply *Mayer*'s standard of review, which applied to a discretionary cost that required evidentiary support, to a mandatory cost, which required only a basis.

For our standard then we return to *Johnson*. *Johnson* tells us that there need be only a "basis" in the record to support a cost, and that "[a]bsent a challenge to a specific cost or basis for the assessment of that cost, a bill of cost is sufficient." *Id.* at 390, 396. We believe *Johnson* shows that a "basis" for a cost is nothing more than attribution of the assessed amount to statutorily authorized costs or fees. *See* TEX. CODE CRIM. PROC. art. 103.002 ("An officer may not impose a cost . . . for a service for which a cost is not expressly provided by law.").

In this case we have a judgment that assesses $290 in court costs and $875 in reimbursement fees. The bill of costs lists out $1,115 in mandatory costs and fees, including $835 assessed for witness summoning. Thus, there is a basis for all the costs assessed on the judgment. Without a challenge to a specific cost, that would be sufficient.

What *Johnson* does not elaborate on is what sorts of "challenges" a defendant may make for the first time on appeal. Court of Criminal Appeals' caselaw makes clear a defendant can make any number of legal challenges to assessed costs—such as the claim we sustained in the appellant's third point—but we find no example of that court allowing a factual challenge to a bill of cost. We do not rule out the possibility of such fact-based claims, but here, given the burden of proof on appeal and the lack of evidence in the appellate record, we conclude the appellant has failed to show error in the bill of cost.

As a starting point, we find no requirement in statute or binding caselaw for the appellate record to affirmatively prove every fact-based cost. Such a requirement would be inconsistent with *Johnson*'s rejection of sufficiency review.

As with any document in the appellate record, we presume the bill of cost is correct. *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) ("The presumption of regularity is a judicial construct that requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court."); *Keller v. State*, 125 S.W.3d 600, 605 (Tex. App.—Houston [1st Dist.] 2003) ("A presumption of truthfulness and regularity applies to documents filed in the trial court."), *pet. dism'd,* 146 S.W.3d 677 (Tex. Crim. App. 2004); *see Whary v. State*, No. 03-16-00737-CR, 2017 WL 2333266, at *3 (Tex. App.—Austin May 24, 2017, no

pet.) (mem. op., not designated for publication) (applying presumption of regularity to fee listed in bill of cost). "This means that the recitations in the records of the trial court . . . are binding in the absence of direct proof of their falsity." *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984).

The bill of costs before us states there were $835 in witness summoning fees. The appellant's argument would require the appellate record to provide affirmative proof supporting this amount. That flips the presumption of regularity on its head and treats the bill of cost as false until proven true. We reject that argument. Instead, we presume regularity and review the record to see if it contains "direct proof of [the bill of cost's] falsity." *Id*.

The record here is, as appellate records almost always are, sparse on details about the source of fact-based court costs. The record contains 147 served subpoenas. By itself that would justify $735 in summoning fees, but not the assessed $835. *See* TEX. CODE CRIM. PROC. art. 102.011(a)(3) (assessing reimbursement fee of $5 for each served subpoena). But the record does not affirmatively show there were no other bases for assessing summoning fees. For instance, a fair number of the subpoenas were served by personal service. The record does not show that the number of miles traveled, and necessary meal and lodging expenses incurred, were insufficient to account for the additional $100. *See* TEX. CODE CRIM. PROC. art. 102.011(b) (requiring defendant pay 29¢ per mile traveled by law enforcement

officer serving subpoena, as well as for "necessary and reasonable expense for meals and lodging incurred" serving subpoenas).

Nor has the appellant shown that the subpoenas in the record were the only ones served. While the appellant requested that "filings regarding subpoenas" be included in the clerk's record, it is not unheard of for requested documents not to make it into the clerk's record on appeal. Article 102.011 requires a convicted defendant to pay $5 for each witness that is summoned, not for each subpoena that is properly filed with the clerk and sent up on appeal. Determining how many witnesses were summoned, with the level of certainty required to overcome the presumption of regularity, cannot be done with this record.

The bill of cost shows that the basis for the assessment of $835 in court costs is witness summoning fees. The record does not overcome the presumption that this assessment is correct We overrule the appellant's fourth point without prejudice to his ability to move for a correction of costs in the trial court, where further facts can be adduced. *See* TEX. CODE CRIM. PROC. art. 103.008; *London v. State*, 490 S.W.3d 503, 508 n.5 (Tex. Crim. App. 2016) (calling Article 103.008 procedure "tailor-made" for challenging assessed court costs).

## C. Delayed Payment

In his fifth point of error the appellant asks us to remove *all* assessed costs and fees from the bill of cost.

The appellant's requests hinges on two claims. First, he claims that the trial court's judgment orders that he not pay costs until after he has served his sentence, as authorized by Code of Criminal Procedure Article 42.15(b)(2). He bases this claim on the following language from the judgment:

> Upon release from confinement, the Court Orders Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or arrange to pay any fines, court costs, reimbursement fees, and restitution due.

Second, he claims that the current bill of cost requires him to pay his costs immediately, in violation of the court's judgment. He bases this claim on Code of Criminal Procedure Article 103.001(a), which states that "[a] cost is not payable by the person charged with the cost until a written bill is: (1) produced . . . ; (2) signed by . . . the officer who is entitled to receive payment for the cost; and (3) provided to the person charged with the cost."

The appellant claims that the bill of cost "meets the statutory requirements of a cost that is payable now." He claims this "conflicts with the trial court's orders."

The appellant's textual interpretations are questionable. On its face the trial court's judgment requires him to "pay any . . . court costs . . . due" when he is released from confinement. It does not prohibit him from paying his court costs

22

earlier, nor does it prohibit immediate collection efforts. All it says is that when he is released from custody, he must pay anything due at that time.

And Article 103.001 does not state that costs are immediately payable when a bill of cost is complete. It says that a cost is not payable "until" certain preconditions are met.

The only authority the appellant provides that shows a court striking costs is *Bruedigam v. State*, No. 07-23-00429-CR, 2024 WL 2739395 (Tex. App.—Amarillo May 28, 2024, no pet.) (mem. op., not designated for publication). But in that case the trial court had explicitly ordered that the defendant pay $0 in court costs, based, apparently, on a finding of indigence under Code of Criminal Procedure article 42.15(a-1). *Id.* at *1. This record does not have such an order so *Bruedigam* is not instructive.

The appellant provides us no authority suggesting that a bill of cost is incompatible with the language in the judgment. The language in this judgment is identical to that in the Office of Court Administration's standard form judgment,[4] implying there was no specialized finding here as the appellant suggests. The option the trial court selected on the form judgment is the only option available for ordering a defendant confined in a state jail or prison. If this option was incompatible with

---

[4]     *See* Texas Judicial Branch, "Rules and Forms," available at https://www.txcourts. gov/forms/.

the clerk completing a bill of cost, it seems likely that would have come up in the caselaw by now.

Nor does the appellant provide us with authority showing it is proper for a clerk to recreate a bill of cost decades after a judgment when a defendant has completed his sentence. Were we to delete the bill of cost now, the result would be that there would be no bill of cost for the appellant to pay upon his release from confinement. That result would thwart the trial court's order that the appellant pay any costs due at the end of his confinement.

The judgment does not say what the appellant claims it says, nor does the bill of cost do what the appellant claims it does. We see no conflict between the judgment and the bill of cost, and even if we did the appellant has provided us no authority that the correct remedy is for this Court to delete the bill of cost. We overrule the appellant's fifth point.

## Conclusion

We affirm the trial court court's judgments of guilt and the appellant's sentences. We modify the judgment for the deadly-conduct conviction[5] to reflect $0 in court costs and we modify the bill of cost in that case to show consolidated state and local court costs as $0.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

Publish.

---

[5] Trial Court Cause No. 1720032 (No. 01-24-00567-CR).